## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA, *ex rel.*  )
THOMAS BARLETT and KIMBERLY  )
GUMMO,  )
         )
       Plaintiffs,  )
         )
       v.  )    CIVIL ACTION NO. 04-57J
         )
TYRONE HOSPITAL, INC., QUORUM  )
HEALTH RESOURCES, L.L.C., TRIAD  )
HOSPITALS, INC., TYRONE MEDICAL  )
ASSOCIATES, INC., DANIEL ASHCROFT,  )
TRI COUNTY IMAGING ASSOCIATES, INC.,  )
BERNARD DiGIACOBBE, M.D., MARIA  )
FRIDAY, Executrix for the Estate of Daniel  )
Friday, JUDITH NORRIS, BARRY  )
BENDER, M.D.,VICTOR KING, M.D.,  )    JUDGE GIBSON
CARLOS A.WEIGERING, M.D.,  )
RAMESH AGARWAL, M.D.,  )
RAMESH CHOPRA, M.D., RAJ KANSEL, M.D.,  )
and DOES I through XX,  )
         )
       Defendants.  )

# MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

### SYNOPSIS

    The instant civil action is filed pursuant to the False Claims Act, 31 U.S.C. § § 3729-3733 (hereinafter "FCA").  The Plaintiff Relators Thomas Bartlett and Kimberly Gummo (hereinafter collectively "Plaintiffs") allege that the various Defendants were complicit in a scheme to defraud the Government of money through their submission of false claims and statements under the Medicare,

Medicaid and TRICARE/CHAMPUS programs and have retaliated against the Plaintiffs for their efforts in exposing these alleged illegal actions. Amended Complaint (hereinafter "A.C.")(Document No. 2). ¶ ¶ 1-178. Thomas Bartlett (hereinafter "Bartlett") was employed by Quorum Health Resources, L.L.C. (hereinafter "Quorum") and assigned the position of Chief Executive Officer (hereinafter "CEO") at Tyrone Hospital (hereinafter "Tyrone") where Quorum was contracted to manage the operation of Tyrone. A. C. ¶ ¶ 130-131. Bartlett remained in this position from April 2000 until October 5, 2003 and was subsequently terminated from employment with Quorum on December 5, 2003. A.C. ¶ ¶ 130, 138,139. Kimberly Gummo (hereinafter "Gummo") was hired by Bartlett and assigned to the position of Human Relations Director at Tyrone.  A.C. ¶ 29.

The United States of America (hereinafter "US") declined to intervene in this civil action on December 23, 2004 and the Plaintiffs have since prosecuted this civil action. The Amended Complaint in the case *sub judice* was unsealed on December 30, 2004.

The case *sub judice* comes before the Court on five separate motions to dismiss the Plaintiffs' Amended Complaint: Motion to Dismiss (Document No. 10) and Brief in Support (Document No. 11) by Defendants Carlos A. Weigering (hereinafter "Weigering"), Daniel Ashcroft (hereinafter "Ashcroft"), Tri-County Imaging (hereinafter "Tri-County") and Bernard DiGiacobbe (hereinafter "DiGiacobbe"),[1] their Reply Brief (Document No. 65) and their Reply to the Statement of Interest of the US (Document No. 66); Motion to Dismiss First Amended Complaint (Document No. 15) and Memorandum of Law in Support (Document No. 16) by Defendants Quorum and Triad Hospitals, Inc.

---

[1]These Defendants will at times also be collectively referred to as "Tri-County Defendants."

(hereinafter "Triad") and their Reply Brief (Document No. 64);[2] Motion to Dismiss First Amended

Complaint (Document No. 17) and Memorandum of Law in Support (Document No. 18) by Defendants

Tyrone, Tyrone Medical Associates (hereinafter "TMA") and Judith Norris (hereinafter "Norris") and

their Brief in Reply (Document No. 67);[3] Motion to Dismiss First Amended Complaint (Document No.

53) and Memorandum of Law in Support (Document No. 54) by Defendant Ramesh Agarwal

(hereinafter "Agarwal"); Motion to Dismiss (Document No. 60) and Brief in Support (Document No.

61) by Defendants Ramesh Chopra (hereinafter "Chopra") and Raj Kansel (hereinafter "Kansel"). In

addition, the Plaintiffs in this action brought on behalf of the US have filed a Memorandum in

Opposition (Document No. 43) to the first three motions to dismiss, and a Memorandum in Opposition

to the Motions of Agarwal, Chopra and Kansel (Document No. 68). The US filed a Statement of

Interest (Document No. 47) in response to Tri-County Defendants' Motion to Dismiss and also

Supplemental Authority (Document No. 62) thereto without expressing any position as to the merits

of the motions before the Court. US Statement, p. 19.

For the reasons set forth in the Memorandum Opinion below, all Motions to Dismiss will be

granted without prejudice to the Plaintiffs to amend the Amended Complaint.

## JURISDICTION

The Court has subject matter jurisdiction over the alleged violations of the False Claims Act

(hereinafter "FCA") in the case *sub judice* pursuant to 28 U.S.C. § 1331 and the Court possesses

supplemental jurisdiction over the state law claims of violations of the Pennsylvania Whistleblower

---

[2]These Defendants will at times be collectively referred to as the "Quorum Defendants."

[3]These Defendants will at times be collectively referred to as the "Tyrone Defendants."

Law pursuant to 28 U.S.C. § 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and 31 U.S.C.

§ 3732.

## ANALYSIS

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12( b)(6):

> the district court [is] required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant. *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989); *D.P. Enters., Inc. v. Bucks County Community College*, 725 F.2d 943, 944 (3d Cir.1984). In determining whether a claim should be dismissed under Rule 12(b)(6), a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record. Moreover, a case should not be dismissed for failure to state a claim unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232-33, 81 L.Ed.2d 59 (1984); *D.P. Enters.*, 725 F.2d at 944.

*Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). The defendant bears

the burden to demonstrate that the complaint fails to state a claim. *Gould Electronics Inc. v. U.S.*, 220

F.3d 169, 178 (3d Cir. 2000) citing *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.

1991).

In deciding a Rule 12(b)(6) motion to dismiss, a court does not have to accept or give credit to

"bald assertions," "legal conclusions," "unsupported conclusions," "unwarranted inferences,"

"unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the

form of factual conclusions." *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 n.8 (3d Cir.

1997)(citations omitted).

In considering a motion to dismiss, the court is not deciding the issue of whether a plaintiff will

4

ultimately prevail, but is deciding if the plaintiff is entitled to offer evidence to support claims. *See Lake v. Arnold*, 112 F.3d 682 (3d Cir.1997); *Nami v. Fauver,* 82 F.3d 63 (3d Cir. 1996).

> [D]ismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed. 2004)(footnotes omitted). In the case *sub judice*, the Court cannot assume that the Plaintiffs can prove any fact that is not alleged. *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263, n. 13 (3d Cir. 1998) citing *Associated General Contractors of California v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723, 731 (1983).

Federal Rule of Civil Procedure 8(a) reads in pertinent part: **"(a) Claims for Relief.** A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain ...(2) a short and plain statement of the claim showing that the pleader is entitled to relief...."

Federal Rule of Civil Procedure 9(b) reads in pertinent part: **"(b) Fraud, Mistake, Condition of the Mind.** In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall

be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

The standard of Rule 9(b) is separate and apart from that found in rule 12(b)(6). *California Public Employees' Retirement System v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004).

> The purpose of Rule 9(b)"is [to] provide defendants with notice of the precise misconduct that is alleged and to protect defendants' reputations by safeguarding them against spurious allegations of immoral and fraudulent behavior." *In re Burlington Coat Factory Sec Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). In order to put defendants on notice Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." For example, the requirements of Rule 9(b) may be satisfied if the complaint describes the circumstances of the alleged fraud with "precise allegations of date, time, or place" *or* by using some means of "injecting precision and some measure of substantiation into their allegations of fraud." *Naporano Iron & Metal Co. v. Amer. Crane Corp.*, 79 F.Supp.2d 494, 511 (D.N.J. 1999)(internal citations omitted); *see also Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

*Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 173 n.10 (3d Cir. 2002). *See also Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

None of the parties dispute that Federal Rule of Civil Procedure 9(b) is applicable to the Plaintiffs' claims made under the FCA as the application of Rule 9(b) to the False Claims Act is proper. *See U.S. ex rel. Costner v. URS Consultants, Inc., et al.*, 317 F.3d 883, 888 (8th Cir. 2003); *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003); *U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Laboratories, Inc.*, 149 F.3d 227, 234 (3d Cir. 1998); *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997); *Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1476-1477 (2nd Cir. 1995); *Cooper v. Blue Cross and Blue Shield of Florida, Inc.*, 19 F.3d 562, 568-569

(11th Cir. 1994).

The FCA reads in pertinent part:

> (a) **Liability for certain acts.**– Any person who–
> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
> (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;
>
> ***
>
> (7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person....

> (b) **Knowing and knowingly defined.** For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information--
> (1) has actual knowledge of the information;
> (2) acts in deliberate ignorance of the truth or falsity of the information; or
> (3) acts in reckless disregard of the truth or falsity of the information,
> and no proof of specific intent to defraud is required.

> (c) **Claim defined.** For purposes of this section, "claim" includes any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

31 U.S.C. § 3729.

The Plaintiffs plead a total of eight counts against the various Defendants which are violations

of FCA subsections § 3729 (a)(1) at Count I, (a)(2) at Count II, (a)(7) at Count III, (a)(3) at Count IV,

(all four counts by all Plaintiffs against all Defendants) and § 3730(h) at Counts V (by Bartlett against Quorum and Tyrone) and VI (by Gummo against Tyrone) as well as two violations of the Pennsylvania Whistleblower Law, 43 P.S. § 1421-1428 at Counts VII (by Bartlett against Quorum and Tyrone) and VIII (by Gummo against Tyrone).

Because all of the moving Defendants in their respective motions argue that the Amended Complaint is deficient for the purposes of Rule 9(b), the Court will first analyze the sufficiency of the Amended Complaint's FCA allegations under the requirements of Rule 9(b). After an analysis of the Amended Complaint under Rule 9(b), the Court will then proceed to separately address the remaining arguments of the movants.

I.    **FEDERAL RULE OF CIVIL PROCEDURE 9(b)**

A review of the relevant Third Circuit precedent regarding Federal Rule of Civil Procedure 9(b) reveals a dearth of opinions that confront the use of this rule in the context of an alleged FCA violation. Specifically, the one Third Circuit opinion touching upon the subject of pleading fraud with particularity under Rule 9(b) in an FCA claim is found in *United States ex rel. Lacorte v. SmithKline Beecham Clinical Laboratories, Inc.*, 149 F.3d 227 (3d Cir. 1998). In *Lacorte*, a case involving the question of whether a claim was duplicative in violation of 31 U.S.C. § 3730(b)(5), the Third Circuit indicated that the danger of plaintiffs foreclosing additional claims of similar potential plaintiffs by general pleading is prevented by the application of Rule 9(b):

> We do not believe that the decision we reach today creates an undue risk that plaintiffs will engage in such artful pleading. Federal Rule of Civil Procedure 9(b) requires plaintiffs to plead fraud with particularity, specifying the time, place and substance of the defendant's alleged conduct. *See Cooper v. Blue Cross & Blue Shield of Florida*, 19 F.3d 562, 567 (11th Cir.1994). This requirement provides sufficient

8

deterrence against overly broad allegations. Moreover, there is no indication that any of the original plaintiffs in this case worded their complaints in excessively general terms for the purpose of thwarting later claims.

*U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Laboratories, Inc.*, 149 F.3d 227, 234 (3d Cir. 1998). Because the Third Circuit did not examine the issue of the adequacy of the specificity of the allegations of fraud before it, the *Lacorte* opinion is not on point with the issue before us. *Cooper, supra*, as cited by *Lacorte*, also concerns the issue of Rule 9(b) as a deterrent to multiple suits, not the lack of specificity in one false claim allegation.

In *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786 (3d Cir. 1984), an action based upon the Racketeer Influenced and Corrupt Organizations Act, the Third Circuit spoke to the requirements of Rule 9(b) generally:

> [I]n applying Rule 9(b), "focusing exclusively on its 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules.' " *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 100 (3d Cir.1983) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1298, at 407 (1969))...Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud. In the present case, Seville adequately satisfied the requirements of Rule 9(b) by incorporating into the complaint a list identifying with great specificity the pieces of machinery that were the subject of the alleged fraud. Moreover, Seville divided this list into five "exhibits" and identified which pieces of equipment were the subject of which alleged fraudulent transaction. The complaint sets forth the nature of the alleged misrepresentations, and while it does not describe the precise words used, each allegation of fraud adequately describes the nature and subject of the alleged misrepresentation. In sum, we conclude that Seville has alleged the fraud-based offenses with sufficient particularity to withstand a motion to dismiss under Rule 9(b).

*Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir.

1984)(footnote omitted). *See also California Public Employees' Retirement System v. Chubb Corp.*,

394 F.3d 126, 144 (3d Cir. 2004).

The Plaintiffs indicate that the FCA allegations "are based upon Defendants' submission of false

and fraudulent patient claims and hospital cost reports to the United States in order to obtain millions

of dollars in payments for various healthcare services from at least January, 1994 and continuing

through the present." A.C. ¶ 2. The Plaintiffs allege that the FCA was violated through the fact that

the arrangements between the Defendants resulted in claims being made under Medicare, Medicaid and

TRICARE/CHAMPUS health insurance programs that violated the Anti-kickback Statute, 42 U.S.C.

§ 1320a-7b(b), and the Stark Statute, 42 U.S.C. § 1395nn, and that such claims were submitted to the

Government being certified as not having violated these or any other federal statutes. A.C. ¶¶ 3-7, 58-

68. The Plaintiffs set forth the alleged scheme, established by a service agreement between Tyrone and

Tri-County, through which Tri-County essentially overbilled for services provided to Tyrone's patients

referred to it for CT scans, which in turn resulted in profits to the shareholders of Tri-County, *i.e.*,

Defendants Ashcroft, DiGiacobbe, Friday, King, Weigering, Agarwal, Chopra, and Kansel, and such

shareholders also benefitted from a favorable lease agreement, received subsidies for employee salaries

and were sold supplies by Tyrone at "below market prices" resulting in even higher dividend returns

to these Tri-County shareholders. A.C. ¶ ¶ 89-99. Additionally, the Plaintiffs allege violations of the

Stark Law because of DiGiacobbe, Friday, King, Weigering, Agarwal, Chopra and Kansel's

coordination of in-patient and out-patient radiology services for Tyrone's patients. A.C. ¶¶ 101-102.

The Amended Complaint also alleges payment of kickbacks to Defendant Barry Bender, who has not

10

moved to dismiss the Amended Complaint.[4]

Although this description of the illegal kickback and the illegal self-referral schemes used by the Defendants has illuminated how a claim may be established, the Plaintiffs' description of any actual claims submitted for payment is somewhat vague and practically non-existent. The Court agrees with the Plaintiffs that liability under the FCA can attach to the Defendants under the schemes they have alleged, schemes that are illegal through what is known as an "implied certification theory," *see United States ex rel. Pogue v. Diabetes Treatment Centers of America*, 238 F.Supp.2d 258, 263-266 (D.D.C. 2002), but the specificity with which the actual violations are alleged in the Amended Complaint is at issue.

The only specificity found in the Amended Complaint is the indication that the Defendants filed individual claims for reimbursement under Medicare, Medicaid and TRICARE/CHAMPUS as services were provided and then such claims were listed again on the annual Hospital Cost Reports (hereinafter "HCRs") in order to verify whether Tyrone was over-reimbursed or under-reimbursed. The Amended Complaint refers to two different time periods with respect to these individual claims and annual HCRs: first, generally referring to January 1994 through the present (A.C. ¶ 2) and second for illegal self-referrals from 1995 through 2002 (A.C. ¶¶ 100-103). The only other allegation that could enable the Defendants to investigate the specific claims in question would be the fact that the claims were related to CT scans performed by Tri-County. In essence, the particularity which the Plaintiffs have presented consists of a grouping of all individual claims for reimbursement and annual HCRs dating from 1994

---

[4]Defendant Bender has filed of record a letter he has sent to Plaintiffs' counsel. This had been docketed as an answer by the Clerk. See Document No. 32.

through the present that contain a claim for reimbursement for CT scan services provided by Tri-County. This description of false claims is insufficient to satisfy Rule 9(b).

The insufficiency under Rule 9(b) arises first from the need of the various Defendants to separate from all of the reimbursement claims sought from the Government since 1994, those pertaining to services provided by Tri-County. Certainly, the CT scanning services of Tri-County were not the only claims submitted by Tyrone to the Government, but were probably among thousands of claims for various medical care services for which reimbursement was sought. In addition, these claims were repeated in the annual HCRs as part of the procedure for determining if any of the claims were outstanding or if any of the claims resulted in overpayment to Tyrone. No other information is offered that differentiates these claims from others such as dates or the names of the specific doctors who made the referrals.

*Seville* instructs us that Rule 9(b) does not require dates to establish the required specificity and that the required degree of specificity can be delineated through other means, such as the specific identification of the equipment involved in the fraudulent transactions discussed in *Seville*. However, in the case *sub judice*, there is no further information that identifies the specific claims at issue, their amounts or claim numbers, patients' names or claim identification numbers, if available. *See U.S. ex rel. Karvelas* v. *Melrose-Wakefield Hospital*, 360 F.3d 220, 233 (1st Cir. 2004). Tri-County could have conducted thousands of CT scans in the period at issue, some of which were most likely not involved with reimbursement claims to the Government through the Medicare, Medicaid and TRICARE/CHAMPUS programs. Further, not all of the reimbursement claims submitted by Tyrone would have involved services provided by Tri-County. The Court must weigh this level of particularity

12

with the interest of the Defendants in being able to answer and defend the Amended Complaint as well as the mandate of Rule 8 to keep pleadings simplistic and the overall effect of the Defendants being subjected to the allegation of having committed fraudulent acts.  Requiring the Plaintiffs to plead the facts of every claim, including the date, physician and services provided for eleven years would destroy the essence of Rule 8.  On the other hand, permitting the Plaintiffs to generally plead that fraudulent claims were submitted without providing any reference dates or naming the referring physicians involved would be unacceptable as it would not permit a defendant to defend against such a claim.  The particularity of the pleading of the Plaintiffs in the case *sub judice* lands somewhere between these two extremes.  Another consideration is the fact that several key paragraphs of the Amended Complaint are allegedly based upon information and belief.  While pleading the fraud claims in Counts I through III, the particularity requirements of Rule 9(b) require that allegations based upon information and belief must be accompanied by a statement of what efforts were taken to obtain such information from  the opposing party, which has exclusive control over the relevant information as well as a statement of what facts provide a basis for the allegation at hand. *In re American Travellers Corp. Securities Litigation,* 806 F.Supp 547, 554 (E.D.Pa. 1992).

Paragraphs 103, 116, 117, 121, 122, 126 of the Amended Complaint allege pivotal allegations with regard to the submission of false claims, but do so on the basis of information and belief.  The Plaintiffs, who have worked for Quorum and Tyrone respectively in administrative positions had knowledge of the inner workings of Tyrone itself, were aware of the identities of the Defendants, and Bartlett, more so than Gummo, had administrative responsibilities as Tyrone's CEO which would cause him to be aware of the alleged conspiracy regarding alleged claims for Government reimbursement.

13

However, the Plaintiffs fail to even allege a single specific claim that was falsely submitted to the Government, a piece of evidence that appears to have been accessible to Bartlett and not exclusive to the Defendants because as CEO he is alleged to have discovered improper relationships and transactions related to them in his position. A.C. ¶¶ 133-137. Nevertheless, even if the Court overlooks the fact that the Plaintiffs were "insiders" and thus having access to the alleged claims of Tyrone, the institution allegedly submitting the false claims, the Plaintiffs have also failed to submit a statement of the actions taken to obtain the claims information necessary for the pleading of the Amended Complaint and of the facts establishing the basis of the allegations made. *See American Travellers, supra*; *In re Craftmatic Securities Litigation*, 890 F.2d 628, 645 (3d Cir. 1989)(requiring the pleading that the information is within a defendant's exclusive control and "statement of facts upon which the allegations are based"). However, the facts of the Amended Complaint reveal that the Plaintiffs were "insiders" and therefore relief from the strictures of Rule 9(b) will not be permitted because the claims occurring over several years were numerous and are within the control of the Defendants or because the case *sub judice* concerns corporate fraud.

In considering the potential numerosity of claims allegedly made over several years, the Court recognizes the need for balance between Rule 8 and pleading fraud under Rule 9(b) and the fact that every alleged claim need not be plead with specificity, *see U.S. ex rel. Pogue v. Diabetes Treatment Centers of America*, 238 F.Supp.2d 258, 268 (D.D.C. 2002), but the Court also finds it fatal to that pleading that the Plaintiffs failed to produce even one specific claim by the Defendants that was submitted to the Government as an evidentiary example of the claims submitted in order to inject some precision into the Amended Complaint. *See U.S. ex rel. Clausen v. Lab.Corp. of America*, 290 F.3d

14

1301, 1311-1313 (11th Cir. 2002); *U.S. ex rel. Schmidt v. Zimmer, Inc., et al.*, 2005 WL 1806502 at *3 (E.D.Pa. 2005). *See also U.S. ex rel. Quinn v. Omnicare, Inc., et al.*, 382 F.3d 432, 440 (3d Cir. 2004)(upholding *summary judgment* in favor of defendants for failure of plaintiff to submit evidence of at least one claim being submitted to the government). The Court believes that without an alternative method of creating precision within their pleading, the Plaintiffs' Amended Complaint fails under controlling Third Circuit precedent. Although the Court agrees with the Plaintiffs that Rule 8(a) does not require them to plead the specifics of each alleged fraudulent claim or statement submitted to the Government, the Court believes that evidence of at least one specific claim submitted by these Defendants through the schemes alleged is required to inject the necessary precision required of a Rule 9(b) pleading in the Third Circuit in the absence of pleading statements of date, place and time.[5] Therefore, the Plaintiffs' Amended Complaint in Counts I, II and III fails to conform to the pleading requirements of Rule 9(b) with respect to the allegations of the actual submission of claims.

The Court also notes that in Count IV of the Complaint a conspiracy in violation of 31 U.S.C. § 3729(a)(3) is alleged. Some Defendants argue that the failure to properly plead the underlying fraud in accordance with Rule 9(b) defeats the accompanying conspiracy allegations as well. *See* Tyrone's Brief, p. 13, *citing U.S. ex rel. Atkinson v. Pennsylvania Shipbuilding Co.*, No. 94-CV-7316, 2000 WL 1207162 (E.D.Pa. Aug. 24, 2000). These Defendants read *Atkinson* incorrectly. The district court in *Atkinson*, citing various cases, including *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989), found that the underlying fraud allegations must comply with the heightened pleading requirements in Rule 9(b),

---

[5]The Court finds Judge Lee's opinion in *Chambers Development Securities Litigation*, 848 F.Supp. 602, 622 (W.D.Pa. 1994) to be inapposite as the Plaintiffs in the case *sub judice* are former "insiders" who had access to the details of the alleged fraudulent acts by the fact of their employment by Quorum and Tyrone respectively.

but that the allegations of conspiracy only need to comply with the notice pleading requirements found in Rule 8(a). *Atkinson* at *10.

This Court agrees with the *Atkinson* Court that Rule 8(a) pleading requirements, and not the heightened pleading requirements of Rule 9(b) apply to the conspiracy alleged in Count IV. Therefore, Court also disagrees with the Defendants that the failure of Counts I through III to comply with Rule 9(b) inevitably dooms Count IV based upon § 3927(a)(3). The Court agrees with the Plaintiffs and finds that Count IV of the Amended Complaint along with the relevant factual paragraphs of the Amended Complaint must comply with Rule 8(a) notice pleading requirements. In particular, the *Atkinson* court found that in order to comply with Rule 8(a) when pleading a conspiracy pursuant to 31 U.S.C. § 3729(a)(3), a plaintiff must "describe 'the general composition of the conspiracy, some or all of its broad objectives, and defendant's general role in that conspiracy.'" *Atkinson* at *10 citing *Rose v. Bartle*, 871 F.2d 331, 336 (3d Cir. 1989). With respect to whether the Court finds Count IV to be properly plead in accordance with Rule 8(a), the Court finds that Count IV does not comply with Rule 8(a).

In addition, these Defendants challenge the sufficiency of the allegations of Count IV alleging conspiracy under 31 U.S.C. § 3729(a)(3). To state a conspiracy claim under the FCA, a plaintiff must plead a conspiracy with one or more persons to defraud the Government through obtaining payment or allowance of a false or fraudulent claim and that at least one of the co-conspirators committed an overt act in furtherance of the conspiracy. *Blusal Meats, Inc. v. U.S.*, 638 F.Supp. 824, 828 (S.D.N.Y. 1986)(citations omitted). *Blusal Meats* also indicated that a third element of damages incurred by the Government as a result of a false claim is also required, but this Court disagrees. *See U.S. ex rel.*

16

*Atkinson v. Pennsylvania Shipbuilding Co.*, *et al.*, 94-CV-7316, 2000 WL 1207162 * 7 n. 12 (E.D.Pa. Aug. 24, 2000). The express language of the statute indicates the opposite: "Any person...who conspires to defraud the Government...is liable to the ...Government for a civil penalty..., plus 3 times the amount of damages which the Government sustains because of the act that person...." 31 U.S.C. § 3729(a). *Blusal Meats* recognizes this point, but does not clarify that the third element of "damages" is unnecessary to succeed in a conspiracy action under § 3729(a)(3), but only that it is necessary for recovery of damages that are alleged to have been suffered by the United States. *See Blusal Meats* at 828. Clearly, damages are not necessary to make a claim of conspiracy under the FCA, and therefore to recover the civil penalty and costs.

Without reproducing the relevant paragraphs of the complaint in whole, the Court refers to the Amended Complaint, paragraphs 2-7, 48, 53, 79, 80, 86-103, 116-122, 124, 126, 128, 147, 149, 150 and 158 which concern the alleged agreements, kickbacks, illegal financial relationships, and submission of claims to the Government. None of these paragraphs indicate which Defendants entered into an agreement. The Complaint indicates that kickbacks were paid to physicians by "Defendants", but does not specify which Defendants. A.C. ¶¶ 2-5. The only allegation of an agreement to defraud the Government is found in paragraph 158, which is conclusory in nature and in fact contains legal conclusions which the Court need not and does not accept for purposes of this motion to dismiss. Nowhere are the Defendants who are alleged to have entered into an agreement identified by name. The paragraphs mentioned above paint a picture of illegal kickbacks and financial relationships between physicians and Tyrone and appear to imply that Tyrone submitted claims to the Government but do not allege that the physicians agreed or even possibly knew that their billings would be submitted for

17

reimbursement by Tyrone through the submission of false claims.[6] Some of the allegations go no further than alleging an agreement by Tyrone to pay kickbacks and illegal reimbursements to physicians in exchange for referrals to Tyrone and not an agreement to further submit claims for the kickbacks and reimbursements to the Government. In all simplicity, the Amended Complaint fails to properly allege an agreement, which is the "essence" of the conspiracy claim based upon 31 U.S.C. § 3729(a)(3) and alleged in Count IV. *Blusal Meats, Inc. v. U.S.*, 638 F.Supp. 824, 828 (S.D.N.Y. 1986). The failure of the Amended Complaint to state the existence of an agreement to defraud the Government by the Defendants causes Count IV to fail under Rule 8(a). Count IV is therefore dismissed without prejudice.

In turn, the Court now reviews the specific arguments raised by the various Defendants.

## II.     ARGUMENTS OF ASHCROFT, DIGIACOBBE, WEIGERING, AND TRI-COUNTY

Defendants Ashcroft, DiGiacobbe, Weigering and Tri-County argue that the Complaint does not allege their involvement in the submission of claims to the Government. However, these Defendants overlook established precedent that finds those persons who *cause* a false claim to be submitted to the Government will be liable for such false claims. *U. S. v. Bornstein*, 423 U.S. 303, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976). *U.S. v. Veneziale*, 268 F.2d 504 (3d Cir. 1959). The same causation language applies to the submission of false records or statements to get a claim paid or return money to the Government. *See* 31 U.S.C. § 3729(a)(2), (a)(7).

On Counts I through IV, the Plaintiffs allege violations of 31 U.S.C. § 3729 subsections (a)(1),

---

[6]While some of the allegations state that Defendants other than Tyrone submitted claims, this is in conflict with separate allegations that allege that the claims were submitted to the Government by forms submitted by Tyrone. Additionally, if individual Defendants submitted their own false claims to the Government without involvement of other parties, legally a conspiracy could not have occurred.

(a)(2), (a)(3)and (a)(7). Accepting as true the facts alleged in the Amended Complaint, the Plaintiffs have sufficiently alleged violations of (a)(1), (a)(2) and (a)(7) to the extent these Defendants participated in causing the basis for false claims through establishment of illegal relationships. The Court recognizes that violations of the FCA under § 3729(a)(1) can be committed through the submission of a false claim even in the absence of a false statement or false record under § 3729(a)(2), *see U.S. ex rel. Karvelas v. Melrose-Wakefield Hospital*, 360 F.3d 220, 232 (1st Cir. 2004) and *U.S. ex rel. Quinn v. Omnicare, Inc., et al.*, 382 F.3d 432, 441-443 (3d Cir. 2004)[7](discussing the difference between express and implied legally false certification theories), specifically with regard to claims submitted that are required to comply with the Anti-Kickback Statute (42 U.S.C. § 1320a-7b) and the Stark Statute (42 U.S.C. § 1395nn). *See U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc., et al.*, 238 F.Supp.2d 258, 266 (D.D.C. 2002). However, "[e]vidence of an actual false claim is 'the *sine qua non* of a False Claims Act violation.'" *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 225 (1st Cir. 2004)(citations omitted). Although the Tri-County Defendants may have taken actions that created the basis of a claim in making referrals or taking kickbacks, the Amended Complaint fails to allege with the specificity required by Rule 9(b) that any such claims based upon these alleged schemes were submitted to the Government. *See supra*, Section I.

Rule 9(b) is applicable to defendants in an alleged fraud. *See e.g. United States ex rel. Costner v. URS Consultants, Inc., et al.*, 317 F.3d 883, 889 (8th Cir. 2003)(dismissing claims pursuant to Rule 9(b) for failure to specifically identify defendants participating in alleged actions). Clearly, the

---

[7]The Third Circuit in this opinion notes that it has not yet adopted the "certification theory", presumably in either the express or implied forms. *Quinn* at 441-443.

Amended Complaint refers to Ashcroft, Tyrone's chief financial officer, whose job it was to attest to the certifications in Tyrone's annual HCRs (A.C. ¶ 68) and that he and DiGiacobbe incorporated Tri-County and had it enter into a service agreement and lease agreement with Tyrone that was favorable to Tri-County and facilitated the self-referrals and kickbacks that were the basis of possible false claims made by Tyrone to the Government (A.C. ¶¶ 89-97). Tri-County also benefitted from receiving employee salary subsidies and obtained equipment at below market prices from Tyrone (A.C. ¶ ¶ 98-99). These financial benefits of Tri-County in turn benefitted its stock owners and directors, including Ashcroft, DiGiacobbe, and Weigering, who agreed to operate Tri-County in this manner (A.C. ¶¶ 94-99). Weigering is also alleged to have referred patients to Tyrone in violation of the Anti-kickback and Stark Statutes, which resulted in the possible submission of false claims (A.C. ¶¶ 89-99, 102-103). The actions alleged as to these Defendants in the Amended Complaint clearly fit within the statutory language of causation found in § 3729(a)(1), (a)(2), (a)(7). Despite this conclusion, Counts I through III fail due to their lack of compliance with Rule 9(b) as to allegations of the actual submission of false claims and statements to the government.

The conspiracy allegations of Count IV, and accompanying factual allegations found throughout the Amended Complaint, when accepted as true, sufficiently plead an overt act by a co-conspirator in furtherance of the conspiracy. *U.S. v. Cripps*, 460 F.Supp. 969, 975 (E.D.MI. 1978) citing *United States ex rel. Marcus v. Hess*, 41 F.Supp. 197 (W.D.Pa.1941), aff'd, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943). Although he is not the only person alleged to act in furtherance of the conspiracy, Ashcroft's alleged acts alone would implicate all other members of an alleged conspiracy. However, as noted previously, Count IV fails for its lack of allegation of a conspiratorial agreement even though

20

an overt act is properly alleged.

Therefore, despite the legally sufficient allegation of an overt act, Count IV will be dismissed without prejudice.

## III.   ARGUMENTS OF QUORUM AND TRIAD

Quorum and Triad's primary argument as to Counts I, II and III is that neither of them caused the other alleged conspiring Defendants to submit a false claim or false record/statement in order to have false claims paid by the Government. The Plaintiffs assert that Quorum and Triad knowingly assisted in the submission of claims by Tyrone through its management of Tyrone and that officers of the Quorum Defendants were aware of the submission of false records and claims because of Bartlett's communication of this fact to them. While it may be disturbing to some to find that a management entity who is aware of the illegalities alleged here would not be liable for those illegalities, the Plaintiffs have not alleged sufficient facts to bring Quorum and Triad into the fold of those who were allegedly submitting false records and claims in violation of § 3729(a)(1), (a)(2) and (a)(7). The precedent is clear: "These provisions, considered together, indicate a purpose to reach any person who knowingly assisted in causing the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government." *U. S. ex rel. Marcus v. Hess*, 317 U.S. 537, 544-545, 63 S.Ct. 379, 384 (1943).

Indeed, despite their alleged "expertise" in "compliance" (A.C. ¶ 125) and knowledge of the alleged illegal schemes related by Bartlett (A.C. ¶ 129), Quorum and Triad did not contract with the Government for reimbursement of the claims at issue and, assuming as true that they knew of this illegal scheme being conducted within the corporate entity they managed, this knowledge does not

21

equate to causing the false claims and submission of false records. This is particularly so when Ashcroft, as the chief financial officer and the signator of the annual HCRs, is not a corporate officer alleged to have been supplied to Tyrone by the management agreement. Further, the Plaintiffs do not allege that Quorum or Triad were members of the conspiracy, a conspiracy that was allegedly commenced in 1987. A.C. ¶¶ 89-99. No acts by Quorum or Triad that caused the submission of false claims or creation of false records are alleged by the Plaintiffs. Essentially, Quorum and its parent company Triad stood and watched as the other Defendants are alleged to have taken actions that defrauded the Government. This is completely converse from the situation found in *United States v. Veneziale*, 268 F.2d 504 (3d Cir. 1959) where the defendant caused a married couple to apply for a government loan stating the reason for the loan was home improvements while the true purpose for the loan money was to purchase the property of the defendant. The Third Circuit concluded that even though the money for the claim was received by innocent third parties (the married couple), the defendant had caused the submission of a false claim and was liable although he did not enter into a contractual agreement with the Government. *Veneziale* at 505-506.

In the case *sub judice*, no action by Quorum or Triad is alleged that would support the theory that these two Defendants caused the submission of false claims and accompanying false records. The case of *U.S. v. Raymond and Whitcomb Co.*, 53 F.Supp.2d 436, 445 (S.D.N.Y. 1999) as cited by the Plaintiffs is inapposite because the entity, Raymond and Whitcomb, directed its agent St. John to use the non-profit postage rate for certain mailings, which could not be classified as non-profit mailings. In that case, the direction by Raymond and Whitcomb to St. John to make mailings at a certain rate was the lynchpin act that brought Raymond and Whitcomb within the "causation" element of a false claim.

22

*Raymond* at 445. Metaphorically speaking, Quorum and Triad sat and watched as the bank was robbed. They took no action. No liability attaches under the FCA for their inaction.

The Amended Complaint also fails to allege how, after the completion of the internal audits and recommendation to Quorum by Bartlett for "self-disclosure," the Quorum Defendants proceeded to participate in the submission of subsequent claims and HCRs or that a lack of response from them caused the submission of false claims. At most, the Amended Complaint alleges inaction on Quorum and Triad's part for claims and HCRs submitted after Bartlett's recommendations of "self-disclosure" as is alleged for the claims and HCRs submitted prior to the internal audits. Therefore, Count I as to Quorum and Triad is dismissed without prejudice. This analysis applies equally to Counts II and III and these counts are dismissed as to Quorum and Triad without prejudice as well.

As to Count II, the Quorum Defendants also argue that it should be dismissed as the requests for interim payments by Tyrone, submitted through a form called "UB-92", were received and paid before the submission of the annual HCRs, which outlined the year's interim payments using all of the UB-92s to determine if the Government was entitled to a reimbursement because of overpayment or was required to pay Tyrone further reimbursement because of underpayments.

Specific claims for reimbursement under Medicare (as differentiated from annual collective reports such as HCRs), which the Government does not owe because of the claimant's non-compliance with the Anti-kickback statute, can establish liability under the FCA. *McNutt ex rel. U.S. v. Haleyville Medical Supplies Inc., et al.*, 423 F.3d 1256, 1259-1260 (11th Cir. 2005). Although it may be true that the requests for payments through the submission of UB-92s were paid before the annual HCRs were filed, and that the HCR was not necessary to establish the payment for a UB-92 that was properly paid

23

as to the requested amount, the Court agrees with the Government's position that the HCRs were necessary for the yearly finalization of the payment of all UB-92s. Government's Statement (Document No. 47), pp. 9-11. Specifically, the HCRs were necessary for the finalization of UB-92 claims that were underpaid by the Government or for reimbursement to the Government in those instances of over-payment, they contained certifications that the information contained within them was "true, correct and complete...." and their submission constituted submission of a false claim. *See In re Cardiac Devices Qui Tam Litigation*, 221 F.R.D. 318, 344 (D.Conn. 2004). The Court also agrees that the submission of the HCRs constituted a submission of a false record if the certifications on the HCRs were executed even though the claims submitted were not true, correct and complete in accordance with the certification language. *See U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 20 F.Supp.2d 1017, 1049 (S.D.TX. 1998(a)).    Therefore, the Court finds that the individual UB-92s as well as the HCRs could each be considered a false claim under 31 U.S.C. § 3729(a)(1) and, therefore, a basis of a violation of the FCA because both forms cause a claim for payment to be made to the Government. HCRs can also be considered false statements in violation of 31 U.S.C. § 3729(a)(2).

However, the Amended Complaint lacks specificity as to the claims actually submitted and paid and, therefore, the Court lacks sufficient information upon which to conclude whether this Count should be dismissed completely. Therefore, in light of the fact that the Plaintiffs will be permitted to amend their Amended Complaint, *see infra* p. 38, the Court must rule generally stating that any claim that was reimbursed as to the exact amount or over-reimbursed was not reliant upon the annual HCR to obtain

reimbursement and to this extent for these claims, Count II is dismissed.[8]  To the extent any UB-92 was under-reimbursed, the annual HCR was necessary for the obtaining of reimbursement of the requested amount, and to this extent such claims utilizing the UB-92, the motion to dismiss as to Count II is denied.  Until the Amended Complaint is amended again outlining specific claims submitted, the Court cannot further analyze this issue.  This is yet another reason why the second Amended Complaint must be more specific in order to conform to Rule 9(b).

As to Count III, the Court agrees with Quorum and Triad's argument found in their Reply Brief, pages three and four, where they argue that the Amended Complaint contains no allegation that Quorum did anything to prepare or submit HCRs that failed to correct the prior incorrect claims revealed by the internal audits. Count III is, therefore, dismissed without prejudice as to these Defendants on this point.

In relation to Count IV, Quorum and Triad make three arguments, but it is sufficient for the Court to recognize that the first argument, the lack of allegations that they were members of a conspiracy, is sufficient to grant dismissal without prejudice of this count against Quorum and Triad. Among the supportive allegations for this conclusion is the fact that Quorum and Triad had to be notified of the illegal relationships at Tyrone by "Bartlett and his predecessors." A.C. ¶ 129.

It should be noted that the Court disagrees with these Defendants' second argument that any allegation of a conspiratorial agreement in the Amended Complaint fails to satisfy Rule 9(b) as the Court has already concluded above that Rule 9(b) does not apply to conspiracy agreements under 31

---

[8]To the extent a hypothetical claim was over-reimbursed, the submission of the annual HCR would be the use of a false record under § 3729(a)(7) filed in order to avoid payment to the Government and not the use of a false record to get a false claim paid. 31 U.S.C. § 3729(a).

U.S.C. § 3729(a)(3).

The Court also finds that the Defendants' third argument, that a parent and subsidiary corporation cannot conspire together, is indeed true and thus to the extent Count IV is intended to include an allegation of conspiracy among and between Quorum and Triad, it is dismissed without prejudice. *See* 16 Am. Jur. 2d Conspiracy § 56 (2005); *U.S. ex rel. DRC, Inc. v. Custer Battles, LLC.*, 376 F.Supp.2d 617, 651 (E.D.Va. 2005). The Plaintiffs argue that liability may attach "under theories of agency, control, or alter-ego/piercing, the inquiry is fact specific and should not be resolved on a motion to dismiss." Plaintiffs' Memorandum in Opposition, p. 18. Even though the Court agrees with the Plaintiffs that Rule 9(b) is inapplicable to matters of piercing the corporate veil and related theories, the Plaintiffs have failed to allege any of the theories listed above within their complaint and only describe the relationship between these Defendants as one of parent and subsidiary. A.C. ¶¶ 14-15. The Court also recognizes that no exhibits regarding this issue have been submitted to the Court allowing the conversion of this matter into a motion for summary judgment.

As to Count IV (incorrectly labeled "Count III" in Quorum's Reply Brief, (Document No. 64), p. 5), the Court also agrees that Quorum, as an agent, cannot form a conspiracy with its principal, Tyrone. This is because of the application of the intracorporate conspiracy doctrine which legally prohibits a conspiracy between an agent and its principal. *See General Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313-314 (3d Cir. 2003)(citing *Heffernan v. Hunter*, 189 F.3d 405, 413 (3d Cir.1999)). The Government is incorrect in suggesting that the application of such a doctrine is limited to anti-trust litigation as the Third Circuit in *General Refractories* and *Heffernan* applied that doctrine

26

to attorney-client conspiracies in the contexts of a Pennsylvania state law action of civil conspiracy and civil conspiracy pursuant to 42 U.S.C. § 1985 (1) and (2) respectively. Further, the Court finds no express language in the case of *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 166, 121 S.Ct. 2087, 2092, 150 L.Ed.2d 198, 206 (2001) and its citation to *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 770-771, 104 S.Ct. 2731, 81 L.Ed.2d 268 (1984) restricting the intracorporate immunity doctrine to anti-trust litigation; the citation referred to presents no basis for such a proposition. Even applying a logical extension of agency principals to the case *sub judice*, the Court cannot envision how Quorum as an agent for Tyrone is acting to conspire with Tyrone; Quorum is acting at the direction of its principal, not separate and apart from it and the fact that Quorum is paid under contract for its agency actions is supportive of its agency, not an illegal agreement to benefit from the submission of false claims. It is quite possible that Quorum's ability to look the other way from alleged false claims enabled its contract with Tyrone to be extended, but the existence of the continued agency does not equate with the existence of a conspiracy. Therefore, the Court finds that the intracorporate immunity doctrine applies to Quorum thereby preventing any allegation of conspiracy under Count IV between Tyrone and Quorum. To this end, Count IV is dismissed with prejudice.

Finally, as to Count IV, these Defendants argue that the Amended Complaint fails to allege a specific intent to defraud the Government under 31 U.S.C. § 3729(a)(3). The language of that section reads "Any person who– (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid". The Government argues that § 3927(b) makes it explicit that specific intent to defraud is not necessary. That section reads in pertinent part: "For the purposes of this section, the

terms 'knowing' and 'knowingly' mean that a person with respect to information–(1)has actual

knowledge of the information...and no proof of specific intent to defraud is required." 31 U.S.C. §

3729(b). Clearly, subsection (a)(3) does not contain the language "knowing" or "knowingly", unlike

subsections (a)(1), (a)(2) and (a)(7), and therefore subsection (b) is inapplicable. *See also* 1 JOHN T.

BOESE, CIVIL FALSE CLAIMS AND QUI TAM ACTIONS § 2.01(C)(2) (2d ed. Supp. 2005). Defendants'

motion is denied as to this issue.

Quorum and Triad also contest Count V, which alleges retaliation against Bartlett by Quorum

and Tyrone in violation of 31 U.S.C. § 3730(h). 31 U.S.C. § 3730(h) reads as follows:

> **(h)** Any employee who is discharged, demoted, suspended, threatened, harassed, or in any
> other manner discriminated against in the terms and conditions of employment by his or
> her employer because of lawful acts done by the employee on behalf of the employee or
> others in furtherance of an action under this section, including investigation for, initiation
> of, testimony for, or assistance in an action filed or to be filed under this section, shall be
> entitled to all relief necessary to make the employee whole. Such relief shall include
> reinstatement with the same seniority status such employee would have had but for the
> discrimination, 2 times the amount of back pay, interest on the back pay, and
> compensation for any special damages sustained as a result of the discrimination,
> including litigation costs and reasonable attorneys' fees. An employee may bring an action
> in the appropriate district court of the United States for the relief provided in this
> subsection.

The two elements that must be plead are (1) that a plaintiff engaged in protected activity and (2) that

the plaintiff was retaliated against because of this activity. *See Hutchins v. Wilentz, Goldman & Spitzer*,

253 F.3d 176, 186 (3d Cir. 2001). Quorum argues that the Plaintiffs failed to plead the second element

to an action under 31 U.S.C.A. § 3730(h). Specifically, the Defendants argue that the Plaintiffs did not

plead that the Defendants were on notice of the Plaintiffs' intention to institute or further the initiation

of this current *qui tam* action. The Plaintiffs disagree arguing that the acts of Bartlett were in

furtherance of an investigation for this action that was to be filed, specifically that he uncovered illegal kickbacks and referrals, informed Tyrone's Board of Directors and his supervisors at Quorum of these details and recommended "self-disclosure" of these matters to the Government. Bartlett claims that his removal as Tyrone's CEO and then his termination by Quorum was as a result of his discoveries and recommendation. Once again, the Plaintiffs also argue that Rule 8(a) and not Rule 9(b) applies to the pleading of the Plaintiffs' claims of retaliation; the Court agrees, but even pursuant to Rule 8(a), the Plaintiffs' Amended Complaint fails.

The Court agrees that Bartlett's acts as alleged would constitute protected activity, but nowhere is it alleged that Bartlett sought to conduct this activity to institute a FCA action and therefore, it was not protected activity. Rather, as alleged, the Plaintiff sets forth facts that Bartlett was conducting his investigation in furtherance of his duties as CEO of Tyrone, which along with Quorum, is alleged to have disagreed with Bartlett's resulting recommendation of "self-disclosure." A.C. ¶¶ 130-140. Such investigatory actions of non-compliance pursuant to one's duty as an employee do not constitute protected conduct. *Hutchins* at 187-188. When such investigations are part of the employee's duties, such duties do not suffice to establish protected conduct and further notice that the investigation is for purposes of an FCA claim is required of the employee. *Hutchins* at 191. The Plaintiffs' complaint at Count V and in paragraphs 130 through 140 paints a picture of a hospital in disarray when Bartlett arrived in April 2000 and his duty as CEO was to deal with various crises. In doing so, Bartlett discovered questionable activity alleged to have been conducted by other Defendants to this civil action. After receiving approval from Tyrone's board to seek an independent audit, the information uncovered

29

revealed Tyrone was allegedly over-reimbursed by the Government which caused Bartlett to recommend "self-disclosure." Bartlett's activities are not alleged to have been outside the scope of his tasks as CEO of Tyrone. Furthermore, it is not alleged that notice was given to Quorum or Tyrone that Bartlett's activities were in furtherance of a civil action pursuant to the FCA; Bartlett's actions as alleged demonstrate he was taking measures for the purpose of correcting previous wrongs committed by Tyrone. Finally, if Bartlett recommended "self-disclosure" he was clearly seeking a resolution to the alleged illegality and was not seeking the Government's prosecution of the Defendants to this action.

It is also noted that the fact that Bartlett was employed by Quorum, in a position of service for Tyrone, does not negate the fact that Bartlett did not engage in protected activity. Even though permission for Bartlett's requested internal audit originated from Tyrone, who was not his employer[9], the investigation, as alleged, was still a means of internal investigation of a business and not for the purposes of the initiation or investigation of these matters for an FCA civil action.

Finally, the Quorum Defendants point out in footnote seven of their brief that paragraph 30 of the Amended Complaint alleges that the information from the internal audit was provided to the United States by the Plaintiffs "beginning in approximately October 2003, before filing this action." The Court is also aware that Bartlett alleges his removal as Tyrone's CEO occurred on October 5, 2003. A.C. ¶ 138. For the Court, this is further demonstration that the Amended Complaint fails to state a cause of action as to Count V because it appears that Bartlett only pursued the idea of a civil action under the

---

[9]Although he acted as CEO of Tyrone as an employee of Quorum.

FCA concurrent with or after his removal as CEO of Tyrone. Consequently, Bartlett's actions in seeking an internal audit and investigating the actions of the various Defendants appear to be inquiries for internal business purposes only. For all of these reasons, Count V is dismissed without prejudice.

The only remaining count that involves Quorum is Count VII, which alleges a violation of the Pennsylvania Whistleblower Law, 43 P.S. §§ 1421-1428. The Court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over this count at this time because of the dismissal of the federal claims found in Counts I through V. Should the Plaintiffs file a second amended complaint which properly states their federal claims so as to create a basis of federal jurisdiction, the Court will then entertain any further arguments that may warrant dismissal of these state law claims.

Triad has also argued that all counts implicating it in any liability should be dismissed for the failure of the Plaintiffs to plead that the piercing of the corporate veil or the alter ego test should apply to it as the parent of Quorum and cites in support the cases of *Pearson v. Component Tech Corp.* 247 F.3d 471, 484-485 (3d Cir. 2001) and *United States v. Union Corp.*, 259 F.Supp.2d 356, 388 (E.D. Pa. 2003). The Court agrees and all counts against Triad are dismissed without prejudice.

Quorum and Triad also argue that Bartlett has signed a release that would bar him from prosecuting this civil action against Quorum and Triad. This issue will not be addressed as the Court has already dismissed the Amended Complaint against Quorum and Triad for all of the Counts in which they are implicated. The Court declines to permit discovery on this issue prior to a responsive pleading being filed by Triad and Quorum and prefers that this matter be reviewed by the parties in the discovery phase, and then, if necessary, a possible summary judgment motion could be filed.

31

## IV.    ARGUMENTS OF TYRONE, TMA, NORRIS

TMA and Norris argue that Counts I through IV in the Amended Complaint  fail under Rule 9(b) as to their actions or the lack thereof as plead.  The Court agrees with these Defendants as to Counts I, II and III only. *See* Section I, *supra*.  Norris is only mentioned by name in one specific paragraph (paragraph 26) which indicates her position as a director or chairman of the board for TMA and Tyrone. Other than a conclusory allegation that the management of Tyrone had active participation in paying kickbacks and establishing and maintaining illegal financial relationships on behalf of Tyrone with unnamed physicians (paragraphs 2 through 7), the lack of specificity under Rule 9(b) is evident. As for TMA, it is mentioned more than Norris in the Amended Complaint, but in a general manner which indicates that TMA submitted false claims and was engaged in prohibited financial relationships as a related party to other Defendants.  A.C. ¶ ¶ 80-86, 114, 116, 124-125.  The Court finds these allegations insufficient to establish for purposes of a motion to dismiss that TMA "caused" submission of false claims.  The actions of TMA in creating or submitting claims are not specified in the same manner as the similar alleged actions of Tri-County were specified.  Additionally, without the specificity describing any of the actual claims submitted to the Government, TMA cannot be held liable and the Amended Complaint must be dismissed without prejudice as to TMA as well.

As discussed above, to the extent that the Plaintiffs allege that the HCRs were not used to obtain payment for the UB-92 interim payment request forms, the Amended Complaint is dismissed without prejudice. Had these UB-92s been overpaid, the use of the HCRs with respect to these UB-92s in order to retain the over-payments would establish a claim under § 3729(a)(7).  However, to the extent that

32

the HCRs were utilized to obtain payment for those submissions of UB-92 interim payment request forms that were under-paid through the previous year, the motion to dismiss Count II is denied.

The Tyrone Defendants have argued for the dismissal of Count IV based upon the fact that no conspiratorial agreement to defraud the Government has been alleged in the Amended Complaint. This has been addressed above in Section I, and the motion to dismissed is granted without prejudice to the Plaintiffs to amend Count IV as to this defect.

Among the further arguments for dismissal is that under Count IV of the Amended Complaint, Norris and Tyrone cannot conspire together as Norris, a member of the Board of Directors of Tyrone, is an agent of the principal, Tyrone. *See Siegel Transfer, Inc. v. Carrier Exp., Inc.*, 54 F.3d 1125, 1135-1136 (3d Cir. 1995). The Court agrees and dismisses Count IV as to any alleged conspiracy between Tyrone and Norris or any conspiratorial actions Norris committed with other Defendants on behalf of Tyrone.

The Tyrone Defendants also argue as to Count IV that no overt act in furtherance of the conspiracy has been alleged. However, as mentioned above in Section II, the overt act of one co-conspirator is sufficient to implicate all other co-conspirators in the conspiracy; an overt act has been alleged (acts of Ashcroft, who allegedly committed overt acts in furtherance of the conspiracy), but Count IV has already been dismissed for its failure to contain allegations of an agreement to defraud the Government.    Therefore, Count IV as to Defendants Tyrone and TMA is dismissed without prejudice.

As to Count V, the Court agrees with Tyrone that it should be dismissed from this discrimination count based upon 31 U.S.C. § 3730(h) as Tyrone is not alleged to have employed Bartlett

at all. See A.C. ¶ 130. The language of §3730(h) is expressly clear that this provision applies to employees. The Court believes there is no need to engage in an analysis of whether Bartlett was an employee of Tyrone pursuant to agency principles similar to that found in *Shapiro v. Sutherland,* 835 F.Supp. 836 (E.D.Pa. 1993) as the Plaintiffs have clearly alleged that Bartlett was Quorum's employee and the Court must accept this fact as true for purposes of this motion.

Furthermore, Counts V and VI fail to state a claim as alleged because Bartlett and Gummo, in alleging a retaliatory termination for investigating this *qui tam* action, have failed to allege the requisite fact that they were investigating violations of the FCA for purposes of the current civil action and not at the direction of Tyrone or for some other reason. This was previously discussed above with reference to Bartlett, but this analysis also applies to Gummo as she is alleged to have assisted Bartlett in his investigation. The failure of Bartlett and Gummo to allege that Quorum and Tyrone respectively were on notice of their motivation to conduct an investigation in order to file an FCA civil claim separate and apart from the purpose of fulfilling Tyrone's approval of Bartlett's request for an internal audit requires dismissal of Counts V and VI. *See Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 186 (3d Cir. 2001).

Additionally, Gummo is alleged to have investigated Fair Labor Standards Act violations and Ashcroft's alleged direction to conceal and destroy evidence related to an employment discrimination case. A.C. ¶¶ 142, 144. These matters have no relation to the circumstances of the investigation of FCA claims that Bartlett argues he was furthering. As stated above, the Court found that Bartlett's activity would be considered "protected" if carried out in furtherance of FCA claims, but in fact it was conducted in furtherance of Tyrone's directive. These actions by Gummo, while they may be

34

considered supportive of Bartlett's actions, are even further removed from stating a claim of retaliation as they have no relation to any claims made in violation of the FCA or investigation thereof, and, therefore, cannot be considered "protected activity" which is the basis of discrimination under 31 U.S.C. § 3730(h).

However, one allegation states that Gummo investigated a "mishandling of the Hospital's payroll account" that resulted in inaccuracies in Tyrone's HCRs. A.C. ¶ 143. The fact that Gummo is alleged to have assisted Bartlett through this investigation is detrimental to her claims as Bartlett is alleged to have acted upon direction of Tyrone's Board, not as a result of his own motivation in investigating possible FCA claims, which in turn demonstrates Gummo's motivation was also based upon Tyrone's directive, not the pursuit of violations of the FCA. To state it another way, there is no allegation that Gummo performed this task separate and apart from her "assigned tasks" as an employee.

Count VII, which alleges a violation of the Pennsylvania Whistleblower Law by Tyrone against Bartlett is also dismissed because the Court declines to exercise supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367(3)(c) because the federal claims in Counts I through V have been dismissed. Should the Plaintiffs file a second amended complaint which properly states their federal claims so as to create a basis of federal jurisdiction, the Court will then entertain any further arguments that may warrant dismissal of these state law claims.

Finally, as to Count VIII, Gummo's claim pursuant to the Pennsylvania Whistleblower Law, the Court again declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) as the Court has dismissed all of the federal question claims of the Plaintiffs.

35

## V.     ARGUMENTS OF CHOPRA AND KANSAL

These Defendants offer several arguments in favor of dismissal. The first, that no specific false claims are identified, has already been analyzed. The Court also agrees with the second and third arguments that Chopra and Kansal are not individually alleged to have submitted any false claims to the Government or any specific referrals to Tyrone which in turn initiated services for a patient and resulted in the submission of a claim to the Government. The Court feels that because the submission of claims to the Government must comply with Rule 9(b), the underlying referral by a physician that requested the services for which reimbursement was sought should also be stated with the specificity of Rule 9(b). Otherwise, with only information as to the submission of a claim to the Government, the particular physician-Defendant who made the underlying referral may still go unidentified in the absence of such information being incorporated into the UB-92 or the annual HCR. Therefore, the Amended Complaint fails in these respects under Rule 9(b) as well.

The Court does disagree with these Defendants on their fourth argument that the Plaintiffs have failed to sufficiently allege that they "caused" the submission of false claims. The Amended Complaint indicates that the individual shareholders of Tri-County, including Chopra and Kansal, accepted illegal kickbacks in turn for making referrals that support the alleged claims eventually made to Medicare and other government programs by Tyrone. A.C. ¶¶ 90-103. Clearly, without the illegal referrals as the basis for the services provided to patients, claims could not have been filed with the Government. Although this element of the Amended Complaint is sufficient to withstand Rule 9(b) and Rule 12(b)(6) scrutiny, the aforementioned shortcomings of the Amended Complaint with regard to an actual making of a referral to Tyrone or the submission of false claims still require its dismissal. Finally, the Court

36

also disagrees that the Amended Complaint fails to allege that Chopra or Kansel knew that the claims being submitted to the Government were false. The statute requires "actual knowledge of the information, deliberate ignorance of the truth or falsity of the information; or reckless disregard of the truth or falsity of the information and no proof of specific intent to defraud is required." 31 U.S.C. § 3729 (b). The Court cannot ignore the fact that the Amended Complaint properly alleges that false claims and statements were allegedly knowingly caused by Chopra and Kansel. *See e.g.,* A.C. ¶¶ 119-122. Although specific referrals and the resulting claims are not properly alleged, knowledge of the causing of claims by these two Defendants is properly alleged. On this argument, the motion is denied.

In addition, these Defendants challenge the sufficiency of the allegations of Count IV by alleging conspiracy under 31 U.S.C. § 3729(a)(3). This has been addressed above in Section I and no further discussion is needed. Count IV is therefore dismissed without prejudice.

## VI.   AGARWAL

Agarwal argues generally that the specific false claims have not been alleged pursuant to Rule 9(b). The Court has previously addressed this issue above. Agarwal also argues that he is not specifically named in relation to claims submitted to the Government or any illegal referrals made to Tyrone and that dismissal is warranted on these grounds. The Court agrees and to the extent that Agarwal was not alleged to have submitted false claims to the Government or made specific referrals, the Amended Complaint is dismissed against Agarwal. However, like Chopra and Kansal, the Plaintiffs have sufficiently alleged that all Defendants, including Agarwal "knowingly...caused" the submission of false claims as a result of his alleged participation through the positive action of making alleged illegal referrals. *See e.g.,* A.C. ¶¶ 119-122. Dismissal of the Amended Complaint is not warranted

on this ground, but this does not save the dismissal of the Amended Complaint from its previously discussed lack of specificity under Rule 9(b). Finally, the Court also concludes, just as it did with Defendants Chopra and Kansal, that the Plaintiffs have failed to properly allege a conspiracy, specifically Agarwal's participation and agreement to be a part of the conspiracy under Rule 8(a).

## VII. CONCLUSION

All of the motions before the Court seek dismissal of the Amended Complaint with prejudice. The Court disagrees that dismissal should be with prejudice, noting that the False Claims Act is not intended to necessarily prevent the amendment of a complaint, particularly for the failure to comply with Rule 9(b), but only the amendment of a complaint through the help of discovery. *See U.S. ex rel. Karvelas v. Melrose-Wakefield Hospital,* 360 F.3d 220, 231 (1st Cir. 2004). *See also U.S. ex rel. Barrett v. Columbia/HCA Health Care Corp.,* 251 F.Supp.2d 28, 36-37 (D.D.C. 2003). Therefore, with the exception of the dismissal of Count IV as to any claim of conspiracy between Tyrone and Quorum, all dismissals shall be without prejudice.

Therefore, as more fully stated in the accompanying Order, Tri-County Defendants' Motion to Dismiss is granted in part and denied in part; the Quorum Defendants' Motion to Dismiss is granted in part and denied in part, the Tyrone Defendants' Motion to Dismiss is granted in part and denied in part; Agarwal's Motion to Dismiss is granted in part and denied in part; and Chopra and Kansel's Motion to Dismiss is granted in part and denied in part.

An appropriate Order follows.

38

**AND NOW** this 26th day of January, 2006, this matter coming before the Court on the Tri-County Defendants' Motion to Dismiss (Document No. 10), the Quorum Defendants' Motion to Dismiss First Amended Complaint (Document No. 15), the Tyrone Defendants' Motion to Dismiss First Amended Complaint (Document No. 17), Defendant Agarwal's Motion to Dismiss First Amended Complaint (Document No. 53) and Defendants Chopra and Kansel's Motion to Dismiss (Document No. 60), IT IS HEREBY ORDERED THAT

1.  Tri-County's Motion to Dismiss (Document No. 10) is GRANTED IN PART WITHOUT PREJUDICE as to Counts I, II and III for the Plaintiffs' failure to properly plead these counts with the specificity required by Federal Rule of Civil Procedure 9(b), specifically, the failure to plead an actual false claim submitted to the Government and as to Count IV for the failure of the Plaintiffs to properly plead a conspiratorial agreement in accordance with False Claims Act and DENIED IN PART as to all other arguments;

2.  Quorum Defendants' Motion to Dismiss First Amended Complaint (Document No. 15) is GRANTED IN PART WITHOUT PREJUDICE as to Counts I, II and III for the Plaintiffs' failure to properly plead these counts with the specificity required by Federal Rule of Civil Procedure 9(b), specifically, the failure to plead an actual false claim submitted to the Government, as to Counts I, II and III for the failure to allege the making or causing of a false claim or record by these Defendants, as to Count II for all Hospital Cost Reports submitted to the Government to the extent that they reported the full reimbursement or over-reimbursement of false claims previously submitted, as to

39

Count III for the failure to allege action on the part of these Defendants that caused the submission of false Hospital Cost Reports subsequent to the internal audits of Tyrone Hospital, as to Count IV for the failure of the Plaintiffs to properly plead a conspiratorial agreement in accordance with False Claims Act, and for the inability of Quorurm and Triad to enter into an conspiracy as a subsidiary and parent corporations respectively in the absence of allegations supportive of "piercing the corporate veil" or "alter-ego" theories, as to Count V, and as to Count VII for the Court's decision to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), as to Defendant Triad on Counts I, II, III and IV for the failure of the Plaintiffs to plead either the "piercing of the corporate veil" or "alter-ego" theories and GRANTED IN PART WITH PREJUDICE for the legal impossibility of Quorum as an agent and Tyrone as a principal to enter into a conspiracy and DENIED IN PART as to all other arguments;

3.  Tyrone Defendants' Motion to Dismiss First Amended Complaint (Document No. 17) is GRANTED IN PART WITHOUT PREJUDICE as to as to Counts I, II and III for the Plaintiffs' failure to properly plead these counts with the specificity required by Federal Rule of Civil Procedure 9(b), specifically, the failure to plead an actual false claim submitted to the Government and as to Count IV for the failure of the Plaintiffs to properly plead a conspiratorial agreement in accordance with the False Claims Act and as to Counts I, II and III as to Defendants Norris and TMA for the failure to plead under Federal Rule of Civil Procedure 9(b) with the proper specificity as to their acts in allegedly submitting or causing false claims or statements to be made to the

40

Government, as to Count II for all Hospital Cost Reports submitted to the Government to the extent that they reported the full reimbursement or over-reimbursement of false claims previously submitted, as to Count IV as to any alleged conspiracy between Norris and Tyrone or by Norris on behalf of Tyrone, as to Count V for the Plaintiffs' failure to plead that Bartlett was an employee of Tyrone, as to Counts V and VI for the Plaintiffs' failure to plead that the Tyrone Defendants were on notice that their investigatory activities were in furtherance of this False Claims Act action, as to Count VI, for the pleading by Gummo that her actions in investigating alleged violations of the Fair Labor Standards Act and Ashcroft's actions in concealing/destroying evidence in an employment discrimination matter, as to Count VII and VIII for the Court's decision to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) and DENIED IN PART as to all other arguments;

4.     Defendants Chopra and Kansel's Motion to Dismiss (Document No. 60) is GRANTED IN PART WITHOUT PREJUDICE as to as to Counts I, II and III for the Plaintiffs' failure to properly plead these counts with the specificity required by Federal Rule of Civil Procedure 9(b), specifically, the failure to plead an actual false claim submitted to the Government and the failure to specifically plead that Defendants Chopra and Kansel submitted false claims or made any specific referrals and as to Count IV for the Plaintiffs' failure to properly plead a conspiratorial agreement in accordance with the False Claims Act and DENIED IN PART as to all other arguments.

41

5.      Defendant Agarwal's Motion to Dismiss First Amended Complaint (Document No. 53)

is GRANTED IN PART WITHOUT PREJUDICE as to as to Counts I, II and III for the

Plaintiffs' failure to properly plead these counts with the specificity required by Federal

Rule of Civil Procedure 9(b), specifically, the failure to plead an actual false claim

submitted to the Government and the failure to specifically plead that Defendant

Agarwal submitted false claims or made any specific referrals and as to Count IV for the

Plaintiffs's failure to properly plead a conspiratorial agreement in accordance with the

False Claims Act and DENIED IN PART as to all other arguments.

**IT IS FURTHER ORDERED THAT** The Plaintiffs are granted thirty days from the date of this Order

to amend their Amended Complaint; this amendment shall be filed on or before February 27, 2006.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

cc:     All counsel of record

42